UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| KYLE D. ALAURA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:18-CV-147-HAB |
| | ) |
| ANDREW SAUL, | ) |
| Commissioner of the Social | ) |
| Security Administration[1], | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff Kyle D. Alaura's ("Alaura") Opening Brief (ECF No. 19), filed on December 4, 2018. Andrew Saul, Commissioner of the Social Security Administration (the "Commissioner") filed his Memorandum in Support of Commissioner's Decision (ECF No. 23) on February 7, 2019. Alaura filed his Reply Brief (ECF No. 28) on March 19, 2019. This matter is now ripe for review.

**A.   Procedural History**

This case has a long procedural history that spans nearly ten years, two prior remands, and an opinion by the United States Court of Appeals for the Seventh Circuit. Alaura filed his initial application for disability insurance benefits on December 27, 2010, and a subsequent application for supplemental security income on January 6, 2011. Those applications were denied following a hearing before an administrative law judge ("ALJ"). The denial was affirmed by this Court. *Alaura v. Colvin*, 2015 WL 506205 (N.D. Ind. 2015). The Seventh Circuit reversed, finding that the ALJ

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* Section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

"made no effort to consider the *combined* effects on Alaura's ability to work of all his impairments and limitations." *Alaura v. Colvin*, 797 F.3d 503, 506 (7th Cir. 2015) (original emphasis).

Following remand, another hearing was held before a different ALJ on November 6, 2015. It was again determined that Alaura was not disabled. However, the new ALJ failed to follow the directions of the Seventh Circuit that he "ask a reputable neurologist and a reputable pain specialist . . . to examine Alaura and Alaura's medical records and offer an opinion on his ability to do various forms of light work on a full-time basis." *Id*. As a result, the case was remanded again, this time by the agreement of the parties, and the ALJ was directed to obtain the necessary expert opinions.

Alaura had a third hearing before yet another ALJ on April 21, 2017, with a supplemental hearing on November 15, 2017. Alaura was again determined to not be disabled on August 27, 2018. (R. 1040–58) (the "Decision"). Now, for the third time, Alaura asks this Court to review an adverse determination by an ALJ.

**B.   Legal Analysis**

**1.   *Standard of Review***

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a

2

reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, she "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors [her] ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support [her] conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate [her] assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of her reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**2.    *The ALJ's Decision***

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ determined that Alaura had not engaged in substantial gainful activity since September 17, 2010. At step two, the ALJ determined that Alaura had the following severe impairments: status post traumatic brain injury in September 2010; seizure disorder/post traumatic epilepsy; headaches/migraines/occipital neuralgia; major depressive disorder/adjustment disorder with depressed mood; post-traumatic stress disorder; generalized anxiety disorder; social phobia/social anxiety disorder; obsessive-compulsive disorder; and a history of a learning disorder. The ALJ also found that Alaura had the following non-severe impairments: contusion of his right shoulder; left thumb base intra-articular Bennett fracture; and hearing loss. Virtually all of Alaura's impairments are the result of a 2010 incident where he was struck in the head during a bar fight, necessitating brain surgery and the removal of part of his skull.

At step three, the ALJ found that Alaura did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (R. 1044). At step four, the ALJ found:

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the physical residual functional capacity to perform less than the full range of heavy work as defined in 20 CFR 404.1567(c) and 416.967(c). He can lift and/or carry twenty pounds continuously, twenty-one to fifty pounds frequently, and fifty-one pounds to one hundred pounds on an occasional basis. He can sit for two hours at one time and for a total of six hours in an eight-hour workday, stand for four hours at one time and for a total of four hours in an eight-hour workday, walk for four hours at one time and for a total of four hours in an eight-hour workday. The claimant can frequently reach in all directions, including overhead, he can frequently handle, finger and feel bilaterally, he can frequently push/pull bilaterally, and he can frequently operate foot controls using the bilateral lower extremities. With respect to postural changes, he can frequently stoop, kneel, crouch and crawl and occasionally climb ramps and stairs, but he can never balance or climb ladders or scaffolds. The claimant can avoid ordinary hazards in the workplace such as boxes on the floor, doors ajar and approaching people or vehicles. The claimant can read very small print, an ordinary newspaper, and book print, and he can view a computer screen and determine differences in shapes and colors of small objects such as screws, nuts or bolts. He should avoid all exposure to unprotected heights and operating a motor vehicle. The claimant can tolerate frequent exposure to moving mechanical parts, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat, and vibrations. He can tolerate loud noise (as defined in the DOT, i.e., heavy traffic). In addition, the claimant can understand, remember and carry out simple, routine and repetitive instructions and tasks and he can make judgments on simple work related decisions. He should avoid work activity that requires more complex instructions, judgments and decisions. The claimant can respond appropriately to occasional and superficial interactions with co-workers and supervisors, and he should avoid all work activity requiring interactions with the general-public. He is able to respond appropriately to usual work situations and to changes in a routine work setting.

(R. 1047). At step five, the ALJ determined that Alaura could not perform any past relevant work, but that jobs exist in significant numbers in the national economy that Alaura could perform. Accordingly, Alaura was found not to be disabled.

**3.**     *The ALJ Failed to Properly Weigh the Opinion of Alaura's Treating Physician*

Alaura identified three issues that he argues require remand, but the Court concludes that the ALJ's treatment of the medical opinions is dispositive. A treating physician's opinion about

5

the nature and severity of the claimant's impairment is normally given controlling weight so long as it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is consistent with substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008). If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion. *Bauer*, 532 F.3d at 608; *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996).

Here, the relevant treating physician is Paul Bustion, M.D. On April 6, 2017, Dr. Bustion completed a questionnaire sent to him by Alaura's counsel. (R. 1630–36). On the issue of "attentiveness and thought processes," Dr. Bustion answered "Yes" to the following questions:

- Does this patient have inattention problems that would affect him working?
- Does this patient have somewhat slowed thought processes?
- Does the patient unintentionally ignore or forget reminders or instructions?
- Would this patient, more likely than not, require redirection to task every 30 minutes?
- In an 8-hour shift, would this patient, more likely than not, need redirection to task at least four times?
- More likely than not, would this patient have trouble staying on task for a full 80% of a workday?

(R. 1633–34). These answers are important because, when questioned by Alaura's counsel at the supplemental hearing, the VE testified that employers expect a 90% on-task rate, and that redirection every 30 minutes or four times per day would be beyond employer tolerances. (R. 1094–96). Effectively, if Dr. Bustion's opinions of Alaura's limitations are correct, he is disabled.

6

Both the Commissioner and the ALJ attempt to blunt Dr. Bustion's opinions by pointing to other answers in the questionnaire. Specifically, the ALJ found:

> Of note are Dr. Bustion's other responses to the questionnaire wherein he reported the claimant does not have frequent seizures but has petit mal spells or atypical absence spells that last a [sic] little as a few seconds and are not uncontrolled by medications. He also responded the claimant has recurrent moderate to severe migraines that occur intermittently or occasionally, but not daily, constant or near constant, thereby indicating that treatment has worked to relieve the claimant's chronic daily migraine symptoms.

(R. 1050). The ALJ's findings are correct. They are also wholly irrelevant. No one, certainly not Dr. Bustion, disputes the fact that *some* of Alaura's symptoms are mitigated by medication. The medical records do show improvement in seizure activity and migraine frequency. However, they do not show improvement in his attentiveness or thought processes. Even with the improvements Alaura has achieved, Dr. Bustion still opined that Alaura would need an excessive amount of redirection and that Alaura would be unable to achieve an on-task rate that an employer would find acceptable. Nothing in Dr. Bustion's other responses in the questionnaire call these opinions into question.

The ALJ and the Commissioner also rely on notations in Dr. Bustion's records. True, in his Final Report, Dr. Bustion remarked that Alaura was "doing well on this current antiepileptic drug therapy" and that his "headaches have been stable." (R. 1663). However, the ALJ and the Commissioner ignore the objective findings *in the same report* where Dr. Bustion notes that Alaura has "slow thought processes," "inattention," and a "flat affect." (*Id*.). These are the issues that render Alaura unemployable, and they exist independent of any improvements in his seizure activity or headaches.

7

The ALJ also discounted Dr. Bustion's opinions by contrasting them with the findings of other consultative experts.[2] The ALJ principally relies on the report of Stephen Parker, M.D., a consultative neurologist who examined Alaura on June 10, 2017, whose opinion the ALJ gave the "greatest weight." (R. 1049). It is difficult to discern why the ALJ believes that Dr. Parker's report (R. 1050–60) refutes Dr. Bustion's findings. Dr. Parker makes limited objective findings, essentially confining his examination to Alaura's strength and reflexes. Dr. Parker makes no findings or recommendations related to Alaura's attentiveness or thought processes. Thus, the most important findings by Dr. Bustion, at least with respect to Alaura's ability to work, go completely unexamined and unchallenged by Dr. Parker.

The ALJ's reliance on Dan Boen, Ph.D., fairs no better. Based on a one-time evaluation on June 12, 2017, Dr. Boen concluded that Alaura could "concentrate on the job" and would be able to "stay on task." (R. 1660). The ALJ found this opinion to be "generally consistent with the overall evidence." (R. 1052). This Court has no idea to what "overall evidence" the ALJ is referring, but it is definitively not the treatment records of Alaura's treating neurologist, Dr. Bustion. Throughout his records, Dr. Bustion consistently notes Alaura's slow thought processes and inattention. (*See*, *e.g.*, R. 910, 1016, 1019).

As noted above, it is the responsibility of the ALJ to "build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon*, 270 F.3d at 1176. The ALJ failed to do so here. Rather than meaningfully address the findings of Dr. Bustion in a manner consistent with 20 C.F.R. § 404.1527, the ALJ instead played whack-a-mole with the critiques leveled by Judge Posner in *Alaura*. Judge Posner said the ALJ should get a consulting neurologist, *Alaura*, 797 F.3d at 506, so the ALJ retained Dr. Parker and accepted his findings with little critical analysis. Judge Posner

---

[2] The Commissioner apparently found this line of reasoning unworthy of support, as he makes no attempt to argue the correctness of the ALJ's position in his Memorandum.

criticized the failure to consider the combined effects of Alaura's impairments, *id*., so the ALJ retained Dr. Boen and accepted his findings while ignoring that they contradict those of Dr. Bustion. The ALJ is commended for considering Judge Posner's opinion, but that opinion was not a "to-do list" of tasks the ALJ could simply check off. Instead, it was an explanation of what the foundations of a logical bridge look like. In failing to critically analyze the information obtained in light of the definitive, and dispositive, opinions of Dr. Bustion, the ALJ failed in her task. Accordingly, remand is required.

**4.**     ***Remedy***

The appropriate remedy in most cases where the Court finds the ALJ's decision wanting is to remand for further proceedings. This is so because a court does not have the authority to award disability benefits on grounds other than those provided under 42 U.S.C. § 423. Subsection (a)(1)(E) requires that the claimant must be disabled under the Act in order to qualify for benefits. As the Supreme Court stated in *Office of Personnel Management v. Richmond*, payment from the U.S. Treasury must be authorized by a statute. 496 U.S. 414, 424 (1990). Obduracy is not a ground on which to award benefits; the evidence properly in the record must demonstrate disability. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005).

However, if all factual issues have been resolved and the record supports a finding of disability, an award of benefits is appropriate. *Wilder v. Apfel*, 153 F.3d 799, 804 (7th Cir. 1998). Here, Dr. Bustion has opined that Alaura would require redirection to task once every thirty minutes and at least four times in an eight-hour shift. Dr. Bustion further opined that Alaura would be unable to achieve an 80% on-task rate. The VE testified that these limitations would render an individual unemployable. As noted above, the ALJ has identified no reason that Dr. Bustion's opinions should not be given controlling weight.

  Five Commissioners and three ALJs have had ten years, four evidentiary hearings, and two prior remands to build the necessary logical bridge between the evidence and the decisions to deny Alaura's claims for benefits. Their efforts have all failed. There is no reason for this Court to believe that a third remand for a fourth bite at the apple will change anything. Accordingly, the Court will remand this matter for the sole purpose of awarding benefits. Alaura's benefits should begin as of the alleged onset date, September 17, 2010.

**C. Conclusion**

  For the foregoing reasons, this Court REMANDS this matter with instructions to award benefits. The Clerk is DIRECTED to enter judgment in favor of Plaintiff and against Defendant.

  SO ORDERED on March 5, 2020.

              s/ Holly A. Brady
              JUDGE HOLLY A. BRADY
              UNITED STATES DISTRICT COURT